UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAM INVESTMENT RESEARCH, LLC, | Civ. No. 12-5576 (KM) (MAH) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| PUBLIC SERVICE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Lam Investment Research, LLC ("Lam"), brought this action seeking coverage under a commercial all risks real estate insurance policy issued by the defendant, Public Service Mutual Insurance Company ("PSMIC"). Now before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 20, 23) For the reasons set forth below, summary judgment is granted in favor of PSMIC.

### I.  BACKGROUND

Lam Investment Research, LLC is a corporation owned by Anthony Lam that invests in commercial real estate properties. (Ex. A, Deposition Transcript of Anthony Lam, Aug. 20, 2013 ("Lam Dep. Tr.") 6:2-4) In 2001, Lam purchased a four-story building located at 183 Montgomery Street, Jersey City, NJ (the "Property"). (PSMIC Statement of Material Facts Not in Dispute ("PSMIC Facts") ¶ 1) The building to the east of the Property was demolished at some point prior to the purchase, leaving a vacant lot used for parking. (*Id.* ¶¶ 2-3) The east-side wall of the Property had been a shared, internal wall (referred to as a "party wall") between the two buildings, but with the east building destroyed, that wall became an external wall of the Property. (*Id.* ¶¶ 4, 6) The east wall was constructed of brick. (Lam Dep. Tr. 8:8-11) Wood floor joists from the

1

demolished building were cut but left embedded in the east wall. The wall had been painted but not completely sealed. (Ex. B p. 4)

By 2008, the exterior condition of the Property had deteriorated. (Lam Dep. Tr. 31:16-22) Lam sought a proposal for restoration of the Property's exterior from the engineering firm Raman and Oundjian, but Lam found the price quote too high, and did not engage the firm to complete the work. (PSMIC Facts ¶¶ 10, 12; Lam Dep. Tr. 25:13-26:4, 28:20-22)

On June 5, 2009, PSMIC issued an insurance policy for the Property under policy number CP 014931. (PSMIC Facts ¶ 20; Ex. K) The Policy was renewed the following year. (PSMIC Facts ¶ 21) A copy of this insurance policy, cited from now on as "Policy," may be found at ECF no. 20-5 at 14.

In late 2009 or early 2010, Mr. Lam noticed cracks in the brick masonry and missing bricks on the east wall. (Lam Dep. Tr. 40:1-4; 45:21-22; 46:2-5) In February and March 2010, Lam obtained proposals from Allied Engineering and Optimized Engineering Associates for structural engineering services to strengthen the exposed walls of the Property, replace missing bricks, and repair the cracks. (PSMIC Facts ¶¶ 14, 15; Lam Dep. Tr. 43:5-11; Exs. E, F) The engineer from Optimized, Guy Lagomarsino, concluded that the building showed signs of "serious deterioration" and that the east wall showed evidence of water seepage and cracks which had "increased in size recently with the penetration of water." (Ex. G)

In October of 2010, Mr. Lam obtained an evaluation of the building by an architect, Peter Jensen. (PSMIC Facts ¶ 17) Mr. Jensen noted that the east wall had missing bricks, cracks, and that the wood joists from the demolished building embedded in the masonry of the east wall were exposed to the elements. (Ex. C) He concluded that "the condition of the wall is fair to poor." (*Id.*)

On October 19, 2010, Lam filed a claim giving a date of loss of October 14, 2010. (*Id.* ¶ 25) Jeff Kinkead, a Senior Branch Claims Representative for PSMIC, inspected the Property on October 22, 2010. (*Id.* ¶ 26; Ex. J Affidavit of Jeffrey Kinkead, dated May 7, 2014 ¶5) Mr. Kinkead also obtained an

engineering report, dated December 6, 2010, on the condition of the Property. (PSMIC Facts ¶ 27) That report, by the engineering firm of Simpson Gumpertz and Hager ("Simpson Gumpertz"), concluded that the damage to the east wall was a result of exposure to the elements. (*Id.* ¶ 28; Ex. B) Specifically, the brick masonry on the east wall, which had been intended to be an interior wall, had become saturated with water, which damaged the brick as the water froze and expanded. The resulting cracks allowed more water to seep in and further damage the bricks. Some bricks had fallen from the wall, creating additional entry points for water. Wood floor joists of the demolished building were cut and left pocketed into the wall of the Property. Because those joists were not properly sealed, water could seep into the wall there as well. The report concluded that "the majority of the distress [observed in the east wall] is consistent with the above-described damage caused by normal wear and tear due to exposure to weather and the environment." (Ex. B p. 4) The report noted that "some" of the distress "could be resulting directly from the demolition" of the adjacent building. (*Id.*) The report then concluded that the majority of the damage could have been present at the time Mr. Lam purchased the Property, and that "most of any additional, subsequently observed distress to the building is likely related to wear and tear due to exposure to the weather and the environment." (*Id.* p. 5)

PSMIC informed Mr. Lam that it was denying coverage of his claim on January 20, 2011. (PSMIC Facts ¶ 29; Ex. L) The denial letter indicated the Optimized Engineering Associates report finding that wear and tear, deterioration and earth movement caused the damage, and then noted that such occurrences were specifically excluded under the Policy. (Ex. L p. 3) Mr. Kinkead determined that the wear and tear began when the adjacent building was demolished. (Declaration by Christopher R. Hartmann, Esq. In Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, dated June 10, 2014, Dkt. No. 23-1, Ex. A Transcript of Deposition of Jeffrey Kinkead, July 18, 2013 ("Kinkead Dep.") 53:4-13)

3

Lam filed its complaint on September 6, 2012. (Dkt. No. 1) PSMIC answered on November 12, 2012. (Dkt. No. 7) After the close of discovery and by order of Magistrate Judge Michael A. Hammer dated April 4, 2014 (Dkt. No. 18), PSMIC filed its motion for summary judgment on May 9, 2014. (Dkt. No. 20) Lam filed its cross-motion for summary judgment on June 23, 2014. (Dkt. No. 23) PSMIC filed its reply and opposition to LAM's motion on June 16, 2014. (Dkt. No. 25)

## II.   JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## III.   LEGAL STANDARD ON MOTION

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).

In determining whether there is a "dispute as to any material fact," In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In determining whether a party is "entitled to judgment as a matter of law," in this diversity case I must apply State substantive law. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). That requires me to determine how the State's highest court has decided, or predict how it would decide, the applicable legal issues. Of course, a decision on point by the New Jersey Supreme Court is best. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220-21 (3d Cir. 2008).

> But "in the absence of guidance from the state's highest court, [I] must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would determine the issue at hand."

*Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (quoting *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir.

1996)); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007).

## IV. ANALYSIS

### A. Principles of Interpretation

Under New Jersey law, an insurance policy is "interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). Where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). Where the terms of the policy are ambiguous, however, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). Additionally, New Jersey courts have found coverage in instances where the policy language was clear but a denial of coverage would "contravene[] the insured's reasonable expectations." *Um v. Cumberland Ins. Grp.*, 2008 WL 656805, at *4 (N.J. Super. Ct. App. Div. Mar. 13, 2008).

Coverage under the Policy is provided for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Ex. K, CP 00100695 p. 1) This language, the parties do not dispute, renders it an all-risk policy. All-risk policies are a "special type of insurance extending to risks not usually contemplated, and recovery under the policy will generally be allowed, at least for all losses of a fortuitous nature, in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage." *Victory Peach Grp., Inc. v. Greater N.Y. Mut. Ins. Co.*, 707 A.2d 1383, 1385 (N.J. Super. Ct. App. Div. 1998) (citing

43 Am. Jur. 2d Insurance § 505 (1982)). Nevertheless, an "all-risk" policy is not an "all loss" policy. *See Ariston Airline & Catering Supply Co., Inc. v. Forbes*, 511 A.2d 1278, 1292 (N.J. Super. Ct. Law Div. 1986). All-risk policies cover fortuitous losses, or ones that are "dependent on chance." *Victory Peach Grp., Inc.*, 707 A.2d at 1395 n.1 (citing 5 Appleman, Insurance Law & Practice § 3092 (Supp. 1996-97)).[1]

Although exclusionary clauses are construed narrowly, they will be applied where they are "specific, plain, clear, prominent, and not contrary to public policy." *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, 2015 WL 248490, at *4 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (citing *Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super. Ct. App. Div. 2010))

### B. Concurrent and Sequential Causes

A situation may arise in which (to simplify) two causes contribute to a loss, either concurrently or sequentially, but one of them is the subject of a policy exclusion. As to concurrent covered and non-covered causes, it has been said that, "[w]here included and excluded causes of loss occur concurrently, it appears that New Jersey's lower courts have not been predisposed to find coverage." *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 353 (D.N.J. 1999). As to sequential covered and non-covered causes, the "efficient proximate cause" approach has generally found coverage where the covered risk was "either the first or last step in the chain of causation which leads to the loss." *Id.*

More recently, however, the New Jersey courts have seemed more willing to state a default principle of coverage: "[W]here 'two or more identifiable causes-one a covered event and one excluded-may contribute to a single property loss,' there is coverage absent an anti-concurrent or anti-sequential

---

[1] The undisputed facts demonstrate that the loss to Lam's building was not caused by a fortuitous event. The only conceivable event which may have been a cause of the loss was the demolition of the adjacent building, an event which occurred twenty years before Lam purchased the Property and which is clearly outside the coverage period for the Policy.

clause in the policy." *Ashrit Realty LLC v. Tower Nat. Ins. Co.*, No. A-1647-13T4, 2015 WL 248490, at *5 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (quoting *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 699 (N.J. Super. Ct. App. Div. 2004)). We are thrown back, then, on the language of the policy; we must determine whether it has an "anti-concurrent or anti-sequential clause."

### C.   Policy: Exclusions and Anti-Concurrent/Sequential Clause

Mr. Kinkead testified that Lam's claim was denied because the causes of loss were earth movement and wear and tear. It is undisputed that both are the subject of exclusions under the Policy. (Kinkead Dep. 53:6-9) It is possible, however, that both of these excluded causes contributed; that one or both were not validly excluded; or that they combined with other, covered factors to cause the loss. I therefore consider the policy language concerning concurrent or sequential causes of loss.

#### 1.   Earth movement

PSMIC now concedes in its reply brief that the earth movement exclusion does not apply to this claim. Because it supplies important context, I nevertheless consider it.

The relevant exclusions are set forth under "Causes of Loss – Special Form." (Ex. K, CP 10300695 p. 1) That section provides:

> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is *excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*
>
> [...]
>
> > b. *Earth Movement*
> >
> > > (1) Any earth movement (other than sink-hole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in

> fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(Policy, ECF no. 20-5 at 38; emphasis added.)

The earth movement exclusion is preceded by an umbrella clause stating that PSMIC will not pay for any damage caused "directly or indirectly" by certain occurrences "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." That is clearly an "anti-concurrent [and] anti-sequential clause." As such, it preempts such background interpretation principles as the "efficient proximate cause" doctrine, which by their terms apply only absent contrary policy language. *See Ashrit Realty LLC*, 2015 WL 248490 at *5 (finding identical anti-concurrent/anti-sequential language to be enforceable and denying recovery because one of the undisputed causes of loss was the subject of an exclusion).

Accordingly, if earth movement were found to be one of the causes of the loss, recovery would be denied, regardless of whether the earth movement was the first, last, or concurrent cause of damage. As I say, however, PSMIC now disclaims reliance on the earth movement exclusion. I move on to the wear and tear exclusion.

### 2. Wear and Tear

The wear and tear exclusion is phrased quite differently:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> [...]
>
> d. (1) Wear and tear ...

(Policy, ECF no. 20-5 at 39;

That "wear and tear" exclusion (unlike earth movement) is *not* preceded by the anti-concurrent/anti-sequential language. The umbrella clause that covers this wear and tear subsection states merely that "we will not pay for loss or damage caused by or resulting from any of the following: ... [including wear and tear]." (Ex. K, CP 10300695 p. 2)

If wear and tear, an excluded cause, operated in conjunction with a covered cause, no anti-concurrent/sequential policy language is available to help the insurer. Rather, the wear and tear exclusion must be analyzed under the default rules of interpretation, particularly the "efficient proximate cause" doctrine. *See Assurance Co. of Am., Inc.*, 38 F. Supp. 2d at 353.

The record supports a finding that the efficient proximate cause of damage was in fact wear and tear. Wear and tear was the last, and immediate, causal antecedent of the damage as it appeared on October 14, 2010.

Simpson Gumpertz determined that the damage to the east wall was ongoing and progressive, "caused by normal wear and tear due to exposure to weather and the environment." (Ex. B p. 4) The adjacent building was demolished some 20 years before Lam acquired the Property, and long before the Policy was obtained in June 2009. As a result of that demolition, interior brick masonry was exposed to the elements. Water seeped in at various points, including where bricks had fallen out during or after demolition. Porous wood joists were cut off but not properly sealed, also providing an entry point for moisture. Over time, the water that entered the wall froze and expanded, cracking the masonry.

Notably, Lam does not contest the validity or the findings of the Simpson Gumpertz report. Nor could it; Lam's own consultants reached the same conclusions. (*See* Exs. C (noting the wall was in "fair to poor" condition, was missing bricks and had ends of wood joists embedded which were exposed to the elements), G (noting wall showed signs of "serious deterioration" due to "evidence of water seepage"). In fact, Mr. Lam himself testified that the condition of the wall had deteriorated when compared to its condition in 2001. (Lam Dep. Tr. 31:18-22, ECF no. 20-4 at 10) He quibbles that the wall was at "70%" in 2008 (*id.* 31:18 at 32), but that contention at best goes to the rate, not the fact, of wear and tear. Certainly no competing cause within the policy period has been identified; Lam's contention seems merely to be that some unidentified something, arising after 2008 or so, must be responsible. That is not the stuff of summary judgment.

Lam contends that the wear and tear exclusion should not apply because PSMIC did not do an inspection of the Property when it issued the Policy in 2009. Thus, says Lam, PSMIC is in no position to judge the extent of deterioration from June 2009 to the present. This argument misses the point.

First of all, there is uncontradicted *engineering* evidence, summarized above, that the wear and tear occurred over time, after the east wall was exposed by demolition.

Second, the need to repair the wall did not arise from some specific, identified event that occurred on October 14, 2009, but because of deterioration of the wall, as Lam concedes. (Lam Dep. Tr. 60:18-61:3, ECF no. 20-4 at 17) (noting that cracks did not suddenly appear on October 14, 2010 but that the damage was "progressing" and had "become very serious...much, much more than 2007")) The Policy exclusion is not confined to certain types of wear and tear, or to wear and tear that reaches a particular level; all wear and tear is excluded. Now surely a difference in degree can become a difference in kind; a wrecking ball could not be said to inflict "wear and tear." But these facts come nowhere near bringing Lam's case outside of the kind of progressive deterioration that is meant by the ordinary English phrase "wear and tear." The east wall was ill suited to its purpose; it was never designed or refitted to withstand the elements; and it simply exceeded its useful life. *See generally Steven J. Inc. v. Landmark American Ins. Co.*, 2015 WL 3849166, at *9-10 (M.D. Pa. June 22, 2015) (granting summary judgment to insurer on basis of wear and tear exclusion).

Accordingly, I find that PSMIC has met its burden of establishing that the wear and tear exclusion in the Policy applied to Lam's claim. Accordingly, coverage is denied by the terms of the Policy and summary judgment is granted in favor of PSMIC.

## V. CONCLUSION

For the reasons set forth above, PSMIC's motion for summary judgment is granted and Lam's cross-motion for summary judgment is denied. An appropriate Order follows.

Dated: April 1, 2016

                                             HON. KEVIN MCNULTY, U.S.D.J.